CUTRER, Judge.
This suit for workmen’s compensation benefits was instituted by Wiley Joseph Hayes against his employer, The Hammett Company, Inc., and its workmen’s compensation insurance carrier, the Home Insurance Company. The trial court held that the plaintiff was totally disabled and enti- *1278 tied to workmen’s compensation benefits plus 12% penalty on the amount of compensation withheld and attorney’s fees. From this decision defendants appeal. We affirm.
The defendants’ assignments of error are as follow:
(1) The trial court erred in finding that the plaintiff’s alleged neck injury was caused by or in any way connected with the accident and/or accidents in question;
(2) The trial court erred in finding that the defendants’ failure to resume compensation benefit payments was arbitrary and capricious; and
(3) The trial court erred in casting defendants in judgment for 12% penalties in the amount of $1,564.80.
The trial judge handed down well written reasons for judgment which correctly dispose of the first two issues set forth above. We have examined the record and agree with the trial judge’s reasons which read as follow:

“This suit for workmen’s compensation benefits presents two issues: (1) whether or not plaintiff sustained injuries as a result of a work related accident, and, if so, (2) whether plaintiff is entitled to attorneys fees and penalties on the amount of the claim due.

“In May, 1981, plaintiff was employed by Hammett as a fueler. He claims to have suffered two separate accidents causing separate injuries to his back. The first accident allegedly took place on May 2, 1981 when plaintiff and a co-worker, Mr. Roberts, were lifting a large tool box out of a truck. Plaintiff claims to have injured his ‘lower back’ as a result of this accident. Plaintiff testified that although his lower back was giving him some pain, he returned to work on Monday, May j, 1981. On this date plaintiff allegedly slipped from the top of a truck and fell into a sitting position on the ground, injuring his upper back/neck area. No witnesses were present at the time of this accident. Plaintiff began seeing doctors on May 5, 1981 and has not returned to his regular employment. The parties stipulated that plaintiff was within the course and scope of his employment at the time of the alleged accident.

“Plaintiff testified that since the accidents he has attempted to work on a shrimp boat and has also assisted his wife in a crawfishing operation. Both plaintiff and the skipper of the shrimp boat stated that plaintiff could not perform the work due to lower back pain. Plaintiff and his wife testified that although he tried to do some of the lifting involved in the crawfishing operation, he was unable to do so due to pain in his upper back/neck area.

“Plaintiff began seeing Dr. Kenneth Foumet, his family physician, on May 5, 1981. Dr. Foumet stated that plaintiff complained of pain in both the upper and lower back areas, and upon examination found muscle stiffness and tenderness. Dr. Foumet stated that plaintiff had seen him concerning prostate trouble and associated low back pain, however, went on to state that prostate problems do not cause upper back pain. Dr. Foumet stated that the fall from the truck could injure the upper as well as lower spine, but prescribed only conservative treatment.

“Dissatisifed with Dr. Foumet’s treatment, plaintiff was referred by the Hammett’s insurer to an orthopaedic surgeon, Dr. Fred Webre. Dr. Webre first saw plaintiff on June 15, 1981 and felt that plaintiff had only strained his back. Conservative treatment was prescribed. On July 2, 1981 Dr. Webre saw plaintiff again and felt he could return to work. On July 7, 1981 compensation benefits were discontinued on the basis of Dr. Webre’s report. On July 15, 1981 plaintiff returned to Dr. Webre and told him that he had attempted some yardwork around his house but could not continue due to pain. Dr. Webre then instructed plaintiff not to work. 
*1279
However, compensation benefit payments were not resumed.

“Plaintiff saw Dr. Stuart I. Phillips, an orthopaedic surgeon, on December 7, 1981. Dr. Phillips testified that plaintiff complained of neck pain radiating into the left arm and fingers of the left hand. On the basis of x-rays and physical examination Dr. Phillips diagnosed a ruptured disc with a pinched nerve causing radiating pain. Dr. Phillips saw plaintiff again in March of 1982, and found his condition unchanged. Dr. Phillips felt further testing would be necessary before recommending surgery.

“Plaintiff saw Dr. James C. McDaniel, an orthopaedic surgeon, on June 2, 1982 at the request of counsel for the defendants. Dr. McDaniel performed a physical examination of plaintiff and took x-rays. He testified that he found no objective evidence of a ruptured disc.

“Plaintiff saw Dr. Stephen I. Gold-ware, a neurosurgeon, on June 15, 1982. After a physical examination and review of x-rays, Dr. Goldware felt that plaintiffs pain was being caused by a pinched nerve in his neck, which could be due to ruptured discs. Dr. Goldware stated that a fall as described by plaintiff could cause a disc injury in the cervical spine. He further stated that plaintiff could not be expected to return to heavy manual labor until his neck problem was corrected. Dr. Gold-ware prescribed traction, and if this does not work would prescribe further testing and possible surgery based on the results of these tests.

“The preponderance of the evidence indicates that plaintiff has suffered injuries to his back, and that he still suffers pain due to the injury to his upper back/neck area. It also confirms that a fall such as that described by plaintiff could cause this injury. Regarding the question of the accidents themselves, Olds v. Ashley, [250 La. 935] 200 S 2d 1 (1967) held that evidence of witnesses, which stands uncon-tradicted, must be accepted as true in the absence of circumstances casting suspicion on the reliability of this testimony. The plaintiffs testimony was uncontradicted and reliable. In view of the stipulation that plaintiff was within the course and scope of his employment at the time of his accident, and the other facts listed above, this court finds that plaintiff suffered a disabling injury while within the course and scope of his employment with The Hammett Co., Inc. of Florida.

“This court further finds that plaintiff is totally disabled under the ‘odd-lot’ doctrine as adopted in Oster v. Wet-zel Printing, Inc., 390 So.2d 1318 (La. 1980). This determination is made in view of these facts: (1) plaintiff has held only jobs involving manual labor; (2) his injury prevents his return to manual labor; and (3) he attended school only through the seventh grade, resulting in very limited reading ability and almost no ability to write. These facts indicate plaintiff ‘cannot perform the substantial and material parts of some gainful work of occupation with reasonable continuity. ’ LSA-R.S. 23:1221(2).

“The only remaining questions are whether the employer was arbitrary in discontinuing compensation benefits or in refusing to resume payment of these benefits.

“The evidence shows that compensation benefits were discontinued on July 7, 1981 pursuant to Dr. Webre’s report to the effect that plaintiff could return to work. Laborde v. Roy 0. Martin Lumber Co., Inc., 316 So2d jjO (La.App. 3rd Cir.1975), held that where compensation benefits were discontinued only after the treting physician stated that the employee was fit to return to work, the employer’s action was not arbitrary. Therefore the discontinuance of benefits in this case was not arbitrary.

“However, the failure to resume compensation benefit payments was arbitrary. Alexander v. Department of 
*1280
Culture, Etc., 410 So2d 1286 (La.App. 3rd Cir., 1982), held that ‘where subsequent to an initial optimistic report, an employer receives information indisputably showing a claimant to be disabled, the employer and/or insurer cannot rely upon the early report and solely on its basis avoid penalty and attorneys fees for arbitrary nonpayment of compensation benefits indisputably due the disabled claimant. ’ In the present case, Dr. Webre’s report following the July 15, 1981 appointment with plaintiff clearly indicated that plaintiff should not attempt to work at that time. The parties stipulated to the demand correspondence. Alexander, supra, held also that the employer and/or insurer should have investigated the claim by such means as requesting that the employee submit to a medical examination. In Alexander, supra, as in this case, the employer and insurer did not investigate. Defendants had not disputed plaintiffs right to workmen’s compensation benefits prior to Dr. Webre’s report, as the facts show that compensation benefits were paid through July 7, 1981. Again, the discontinuance based on Dr. Webre’s first report was not arbitrary. However, where defendants neither reinstated benefits after Dr. Webre’s second report nor investigated plaintiffs claim timely as required by Alexander, supra, and LSA-R.S. 23:1201.2, this court finds arbitrary and capricious failure to pay workmen’s compensation benefits. For these reasons plaintiff is entitled to penalties in the sum of 12% of the amount of workmen’s compensation withheld, and attorneys fees.

“In summary, this court finds that plaintiff is totally disabled and is entitled to workmen’s compensation benefits, plus 12% penalty on the amount of compensation withheld, plus attorneys fees. ”

By assignment of error number 3, the defendants contend that the 12% penalty should not be imposed upon the compensation payments which accrued from the time the case was taken under advisement until oral reasons for judgment were handed down. The trial was held on June 9, 1982, and it was held open for medical depositions which were submitted by June 23, 1982. The case was taken under advisement and the written reasons for judgment were handed down on January 3, 1983. The judgment was prepared and approved by counsel for both parties. The judgment dated February 1, 1983, set forth compensation being due through January 18, 1983, in the amount of $13,040.00 and 12% penalties in the amount of $1,564.80 (12% of $13,040,00). Defendants contend that they should not be made to pay penalties for the payments accruing during the time the case was under advisement. The defendants cite no authority for their position, nor do we find any such authority.
The amount of compensation payments past due were not judicially established until the judgment of the trial court was rendered. In this judgment the past due payments were decreed to be $13,040.00 as of January 18, 1983. The 12% penalty was properly applied to this amount under the provisions of LSA-R.S. 23:1201.2. This assignment of error has no merit.
For these reasons the judgment of the trial court is affirmed. Defendants-appellants are to pay the costs of this appeal.
AFFIRMED.