454 So.2d 1113 (1984)
Raymond JOHNSON
v.
INSURANCE COMPANY OF NORTH AMERICA and Louisiana Seed Company, Inc., et al.
No. 83-C-2628.
Supreme Court of Louisiana.
June 25, 1984.
Rehearing Denied September 14, 1984.
*1115 Howard N. Nugent, Jr., Alexandria, for plaintiff-applicant.
Albin A. Provosty, Michael Glass, Alexandria, for defendants-respondents.
WATSON, Justice.
In this suit for workers' compensation benefits, the issues are:
(1) Whether the trial court was clearly wrong in finding plaintiff, Raymond Johnson, disabled at the time of trial; and
(2) Whether the defendant insurer, Insurance Company of North America, was arbitrary and capricious in terminating benefits, making it liable for penalties and attorneys' fees.

FACTS
On July 23, 1981, while employed by defendant, Louisiana Seed Company, Inc., Raymond Johnson, a twenty-one year old forklift operator, had his right leg caught between the machine and a wall because of a clutch malfunction. Johnson was admitted to Rapides General Hospital with abrasions on his right leg, severe abrasions of both ankles, a closed fracture of the right tibia, and marked edema of the entire right leg. On July 28, Johnson was discharged from the hospital with a long leg cast and crutches. Although his hospital stay was uneventful, the toes on his right leg remained swollen the day before his discharge and he was complaining of left ankle pain on the day of his discharge. Johnson went to the ninth grade, but he cannot read well and does not have a driver's license. His employment duties included getting on and off the forklift frequently and moving bags.
After the accident, Johnson was referred to Dr. Douglas Lorin Gamburg, an orthopaedic surgeon, by Dr. William Brown. Dr. Gamburg said that the edema or swelling of the leg was normal with this type of crushing injury, and he was concerned about the swelling from the soft tissue injury to the right ankle. On November 23, despite some edema in the foot and enlargement at the fracture site, Johnson's fracture had healed and he seemed to be progressing satisfactorily. Dr. Gamburg suggested that he return to work on light duty status. Johnson returned to Dr. Gamburg on December 1 with swelling in his right leg; the doctor recommended support hose and no work for another two weeks. When Johnson returned to Dr. Gamburg on December 15, he still had swelling in the area of the fracture as well as in the right ankle. He had a mild limp which appeared related to pain and a tender enlargement over the area of the fracture. Because Johnson still had swelling and pain, Dr. Gamburg prescribed a few more weeks of convalescence. On January 8, 1982, Dr. Gamburg released Johnson for full duty, in the belief that he had reached maximum medical improvement. According to Dr. Gamburg, Johnson had no complaints at that time. In a letter to the insurance company's adjuster, Dr. Gamburg stated that he did not know what Johnson's regular work duties entailed and he admitted, in deposition, that he was also unfamiliar with those duties when he released Johnson to full employment. Relying on Dr. Gamburg's letter of January 8, 1982, the insurance company's claims manager, Mrs. Jean Sorsby, terminated compensation benefits.
After his discharge by Dr. Gamburg, plaintiff saw Dr. Thomas C. Laborde, an *1116 American Board certified specialist in the field of physical medicine and rehabilitation, on February 10, 1982. When Dr. Laborde saw Johnson the patient complained of pain in the right leg just above the ankle and in the ankle itself. The pain was characterized as a constant background type of pain. Johnson described it to Dr. Laborde as moderate and intermittent, depending on his degree of activity. In Dr. Laborde's opinion, Johnson's complaints were consistent with the reasonable and logical assumption that scar tissue had formed in the area of his soft tissue injuries.[1] Strenuous activity could have irritated and possibly aggravated the situation. At the time of his examination, he did not feel that Johnson was capable of returning to work as a forklift operator because active dorsiflexion of the ankle produced pain.
Dr. Laborde's report noted Johnson's complaints of pain and stated that his continuing difficulty likely resulted from soft tissue scarring, fibrosis, possible muscular deconditioning and tightness. He suggested a vigorous physical therapy reconditioning program. Subsequently, on May 4, 1982, the insurance company's claims supervisor received a demand letter from plaintiff's counsel, together with a copy of Dr. Laborde's report. However, the claims supervisor testified in deposition that she attached little importance to the report. She regarded Dr. Laborde as being a doctor with a lesser medical degree than that of Dr. Gamburg, and Dr. Laborde did not specify in his report that Johnson was disabled. However, Ms. Sorsby acknowledged a conflict between the reports of Dr. Gamburg and Dr. Laborde. Compensation was not reinstated or brought up-to-date and no effort was made to obtain a new evaluation of Johnson's condition. The recommended physical therapy was not authorized. Suit was filed immediately, and the therapy was subsequently allowed after consultation with defense counsel.
Dr. Laborde's deposition was taken on September 30, 1982, just over a month before trial. He had received regular reports from the physical therapist, the last one dated July 30. These reports indicated that Johnson had made progress and was having less pain with active motion.
Upon referral from Dr. Laborde, Eugene F. Noel, Jr., a registered physical therapist, saw Johnson in his clinic on June 23, 1982, and instituted a program of physical therapy. At Noel's initial evaluation, there was swelling at the site of the fracture but not in the ankle. In Noel's opinion, a soft tissue crushing type injury takes longer to heal than a fracture. Johnson went regularly to therapy through July 8, 1982. He returned on July 19, 1982, and said that he had increased leg pain and returned again on the 20, 21, and 22 of July. As of the 22nd, Noel concluded that Johnson had reached maximum improvement from the therapy. Noel, who had tried Johnson's forklift, thought Johnson was functionally able to operate his forklift on July 22, 1982.
Raymond Johnson testified that he was hurting and his left leg was bothering him when he last saw Dr. Gamburg. As of trial, on November 5, 1982, he said that his leg still hurt all the time. Johnson identified a knot in his leg at the point of the fracture. According to Johnson, he went to the therapist until he was unable to get transportation. Despite the therapy, his problems with pain and swelling continued and his leg hurt everytime he went home from therapy. Johnson did not return to Dr. Gamburg after his discharge because he considered Gamburg a company doctor. According to Johnson, he was unable to work after his release by Dr. Gamburg and his supervisor was very unsympathetic.
Alton Laborde, supervisor of shipping and receiving with Louisiana Seed Company, said that when Johnson attempted to return to work he remained less than an hour before complaining of pain in his leg and leaving. According to Johnson's live-in companion, his leg was swollen and he complained of pain almost every day. A long time friend of Johnson, Donald Ray Smith, confirmed that the leg was swollen after *1117 the accident. A co-worker, David Lee Sharp, testified that the brakes on the forklifts were sometimes weak and required heavy pressure and the job required continually getting on and off the forklifts, which were two and a half feet from the ground. According to this witness, the forklifts were easy to operate when they were not broken, but his and Johnson's had problems. Sharp said that Johnson's right leg had been swollen since the accident; he confirmed that Johnson had a limp and complaints of right leg pain.
The trial court gave judgment in favor of plaintiff for compensation benefits from January 8, 1982, until plaintiff was no longer disabled, accepting plaintiff's uncontradicted evidence that he was in pain and could not return to his employment at the time of trial on November 5, 1982. Because Dr. Laborde's report of May 4, 1982, did not specifically state that Johnson was disabled, the trial court denied penalties and attorneys' fees, concluding that the insurer was not arbitrary and capricious in relying on Dr. Gamburg's report.
The court of appeal reversed the trial court on the issue of disability at the time of trial with one judge dissenting. Johnson v. Insurance Co. of North America, 440 So.2d 1385 (La.App. 3 Cir.1983). According to the court of appeal, there was no medical evidence that plaintiff was disabled beyond July 22, 1982. The trial court's denial of penalties and attorneys' fees was affirmed. A writ was granted to consider the judgment of the court of appeal. 445 So.2d 443 (La.,1984).

LAW
In a compensation case, the trial court has the responsibility of determining whether a plaintiff is disabled. Simpson v. S.S. Kresge Co., 389 So.2d 65 (La., 1980). A factual finding by the trial court should not be reversed unless it is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.,1978). A reviewing court should not disturb a reasonable evaluation of credibility by the trial court. Crump v. Hartford Acc. & Indem. Co., 367 So.2d 300 (La.,1979); Cadiere v. West Gibson Products Co., Inc., 364 So.2d 998 (La.,1978).
An employee who can only work in substantial pain may be totally disabled. Calogero v. City of New Orleans, 397 So.2d 1252 (La.,1980); Lattin v. Hica Corp., 395 So.2d 690 (La., 1981); and Martin v. H.B. Zachry Co., 424 So.2d 1002 (La., 1982). Plaintiff's uncontradicted evidence of pain can support a finding of substantial and appreciable pain. Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La., 1980). The opinion of a physician or other medical expert about disability does not necessarily determine legal disability. Whitaker v. Church's Fried Chicken, Inc., 387 So.2d 1093 (La.,1980).
In evaluating evidence, the trier of fact should accept as true the uncontradicted testimony of a plaintiff witness, absent a sound reason for its rejection. Robertson v. Scanio Produce and Institutional Foods, Inc., 449 So.2d 459 (La.,1984); West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La., 1979). Lay testimony can be considered despite the absence of a conflict in medical testimony. Tantillo v. Liberty Mutual Insurance Company, 315 So.2d 743 (La., 1975).
An insurer is required to make a reasonable effort to ascertain an employee's exact medical condition before benefits are terminated. Orgeron v. Tri-State Road Boring, Inc., 434 So.2d 65 (La.,1983). If, subsequent to an initial optimistic report, an insurer receives medical information indicating continuing disability, the insurer may not blindly rely upon the earlier report to avoid penalties for arbitrary nonpayment of compensation benefits. Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.,1976). Penalties and attorneys' fees are awarded when an insurer discontinues compensation benefits without probable cause. Guillory v. Travelers Insurance Co., 294 So.2d 215 (La., 1974). An insurer has a sixty day grace period before penalties and attorneys' fees are assessed. LSA-R.S. 22:658.

*1118 CONCLUSION
I. Disability.
Although Dr. Gamburg's letter released Johnson for full duty, Dr. Gamburg was admittedly unfamiliar with Johnson's job requirements. According to Dr. Laborde, Johnson's continued complaints of pain were understandable and in accord with the nature of his soft tissue injuries. Thus, Dr. Laborde's medical testimony was consistent with the lay testimony of Johnson and others about his continuing problem with the right leg. The trial court believed these witnesses, and their testimony can be easily reconciled with that of Dr. Gamburg, a bone doctor primarily concerned with the healing of Johnson's fractured tibia. Tantillo v. Liberty Mutual Insurance Company, supra. This leaves only the deposition testimony of the physical therapist to support the court of appeal's reversal of the trial court.
Expert therapist Noel said that Johnson complained of leg pain on July 19, 1982. However, on July 22, 1982, Noel observed Johnson perform strenuous exercises without complaint and concluded that Johnson had reached the point of full functional recovery. On the other hand, Johnson said his leg hurt everytime he went home from therapy and that he was still bothered with pain and swelling on the day of trial. Noel's opinion of Johnson's disability was not binding on the trial court. Whitaker v. Church's Fried Chicken, Inc., supra; Simpson v. S.S. Kresge Co., supra.
The trial court reasonably concluded that Johnson might have been able to perform strenuous exercise but the end result of that exertion was pain and swelling. Calogero v. City of New Orleans, supra; Lattin v. Hica Corp., supra; Martin v. H.B. Zachry Co., supra; and Dusang v. Henry Beck Builders, Inc., supra. This conclusion is completely consistent with Dr. Laborde's testimony that strenuous activity, such as therapy, despite its long term benefits, could irritate the scar tissue. There is no real conflict in the medical testimony. Tantillo v. Liberty Mutual Insurance Company, supra. The only question to be weighed by the trail court was Johnson's credibility. Robertson v. Scanio Produce and Institutional Foods, Inc., supra; West v. Bayou Vista Manor, Inc., supra. That court's determination that he was a credible witness should not have been reversed by the court of appeal.[2]Crump v. Hartford Acc. & Indem. Co., supra; Cadiere v. West Gibson Products Co., Inc., supra; and Arceneaux v. Domingue, supra. The workers' compensation law must be liberally interpreted in favor of the injured worker. Its beneficient purposes are best served when great weight is given to a court's determination that an employee is disabled.
The evidence supports the trial court's conclusion that Johnson could not perform the only work readily available to him without substantial pain and was therefore totally disabled as of the time of trial.
II. Penalties and Attorneys' Fees.
The insurer was entitled to terminate compensation benefits on January 8, 1982, relying on Dr. Gamburg's letter releasing Johnson for full duty. Oregeron v. Tri-State Road Boring, Inc., supra. The question is whether Dr. Laborde's report, which was received by the insurer on May 4, 1982, required reinstatement of benefits or a further investigation into Johnson's condition. Walker v. Gaines P. Wilson & Son, Inc., supra. Although Dr. Laborde's report did not specify that Johnson was disabled, it noted that he had "continuing difficulty on the basis of soft tissue scarring and fibrosis and possibly muscular deconditioning and tightness." Dr. Laborde recommended a "vigorous physical therapy program." Although the insurance *1119 company's claims supervisor was not arbitrary in failing to reinstate benefits on the basis of this report, she was arbitrary in giving it no credence whatsoever. After receiving Dr. Laborde's report, Ms. Sorsby should have either: (1) authorized the recommended physical therapy, or (2) obtained an updated medical report indicating the therapy was unnecessary. Ms. Sorsby did not have probable cause to completely disregard Dr. Laborde's report, while recognizing that it conflicted with that of Dr. Gamburg. Guillory v. Travelers Insurance Co., supra. However, the physical therapy was authorized within a sixty day period, apparently on advice of counsel, and the insurer is therefore not liable for penalties and attorneys' fees. LSA-R.S. 22:658.
For the foregoing reasons, the judgment of the court of appeal is reversed and the judgment of the trial court is reinstated.
REVERSED.
BLANCHE, J., dissents being of the opinion that the opinion of the Court of Appeal was correct.
LEMMON, J., dissents.
NOTES
[1] This hypothesis could only be verified by an autopsy of the leg.
[2] According to the court of appeal, "all of the medical testimony in the record indicates that the plaintiff was not disabled at the time of trial." 440 So.2d 1385 at 1389. While there may be a paucity of medical evidence about plaintiff's disability at the time of trial, there is no medical evidence that plaintiff was not in substantial pain from his injuries at that time. As the dissenting judge in the court of appeal pointed out, the majority speculated that plaintiff was capable of returning to work on July 22.