557 So.2d 326 (1990)
Roland R. MILLS
v.
GUARANTY INDUSTRIAL CONTRACTORS, INC., et al.
No. 89-CA-1555.
Court of Appeal of Louisiana, Fourth Circuit.
January 16, 1990.
Poindexter & Bowers, Dale W. Poindexter, New Orleans, for plaintiff/appellant.
George Escher, New Orleans, for defendants-appellees.
Before SCHOTT, C.J., and LOBRANO and PLOTKIN, JJ.
PLOTKIN, Judge.
Plaintiff Roland R. Mills appeals a trial court judgment denying him statutory penalties and attorney's fees against defendant/employer Guaranty Industrial Contractors, *327 Inc. and its insurer CNA Insurance Co., and denying him supplemental earnings benefits (SEB). Mills also contests the trial court's decision to allow the defendants a credit for compensation paid prior to trial.
Facts:
Mills injured his elbow and his lower back while in the course and scope of his employment as a maintenance man with Guaranty Industrial Contractors, Inc. on March 24, 1987, when he slipped and fell into a treatment tank while working on a ladder. The defendants paid all plaintiff's medical expenses, plus $405.36 every two weeks in worker's compensation benefits from March 25, 1987 until June 28, 1988.
Compensation payments were discontinued by Guaranty and CNA on June 28, 1988, reportedly after the defendants received communications from both Mills' doctor and a rehabilitation specialist, which indicated that Mills could return to light-duty work.
Plaintiff filed suit, claiming total, permanent disability and, alternatively, total, temporary disability for the "foreseeable future." Additionally, plaintiff claimed that his average wages prior to the injury were $320 per week and that the correct amount of compensation was therefore $213.33 per week, rather than the $202.68 per week paid by the defendant. At trial the defendant stipulated that the plaintiff earned $320 per week prior to trial.
The trial court found that plaintiff was entitled to total, temporary disability from March 25, 1987 until August 22, 1988. Additionally, the court found that the correct amount of compensation was $213.33 per week. In calculating the amount of compensation owed by defendants, the court applied a credit of $13,376 for benefits previously paid. Plaintiff's claim for attorney's fees and penalties was rejected.
Plaintiff appeals, making the following assignments of error:
1. The trial court erred in dismissing his claim for attorney's fees and penalties;
2. The trial court erred in denying him supplemental earnings benefits; and
3. The trial court erred in applying a credit for defendant's previous compensation payments.

ATTORNEY'S FEES AND PENALTIES
Plaintiff argues that he is entitled to attorney's fees and penalties under Louisiana's worker's compensation law for two reasonsbecause defendants improperly discontinued payment of benefits on June 28, 1988 and because defendants failed to investigate his demand for an increased compensation rate.
Discontinuance of Payments
LSA-R.S. 23:1201.2 provides, in pertinent part, as follows:
Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney's fees for the prosecution and collection of such claims.... The provisions of R.S. 22:658(C) shall be applicable to claims arising under this Chapter.
LSA-R.S. 22:658(C) provides for a penalty of $200 or 15 per cent of the face value of the check or draft, whichever is greater, against insurers who fail to settle a worker's compensation insurance claim timely.
Lorenzo Nunez, superintendent of maintenance for the Guaranty project where Mills was working at the time of the accident, testified at trial that on April 18, 1988, he was told by a representative from CNA Insurance that Mills could return to light-duty work. He claimed that he called Mills on April 17, and offered him a job as a lubricator, a job which would not have required heavy lifting because they intended to modify the duties to allow Mills to carry only a one-gallon can of oil rather than the five-gallon can normally used by the lubricator. Nunez testified that Mills told him that he could not accept the job until he contacted his lawyer and that Mills never contacted him subsequently about light-duty work.
*328 Mills' doctor, Dr. Raul R. Diaz, allegedly completed a form, dated April 1, 1988, releasing Mills to light-duty work. Defendants claim that they relied on that document in making the decision to terminate Mills' worker's compensation benefits on June 28, 1988. The record in the case does not include that form, but Dr. Diaz's report, dated April 4, 1988, states that he "filled out a functional evaluation" and that Mills "can probably tolerate some type of light activity." Plaintiff admits in brief that his doctor indicated to the defendants on April 1, 1988 that he could perform the job of lubricator, which the defendants had available at that time.
However, Dr. Diaz's reports dated almost immediately subsequent to the April 1, 1988 report indicate that Mills was not able to return to work after all. In his April 18, 1988 report, the doctor stated that "there is some question involving his return to work" and that Mills needed some additional "exercises and strengthening" before he should be allowed to go back to work. The question of Mills returning to work did not arise again in the doctor reports until the report dated August 10, 1988, in which Dr. Diaz noted that Mills wished to return to some type of light duty. Dr. Diaz stated that he scheduled Mills for a functional capacity evaluation to determine whether he could be returned to "some type of light-duty activities with restrictions." Under the caption "Estimated disability" on the report form, Dr. Diaz wrote "disabled." The August 17, 1988 doctor's report stated essentially the same information as the August 10 reportMills wished to return to light-duty work, but the doctor was waiting for the results of the evaluation. The report dated August 23, 1988 stated that Mills could return to light-duty work with restrictions for a one-week trial period. The record also contains a "Disability Certificate" dated August 18, 1988 which stated that Mills could return to work for a one-week trial on Monday, August 22, 1988.
Louisiana law interpreting the LSA-R.S. 23:1201.2 provides that discontinuance of worker's compensation benefits on the basis of a physician's report indicating that the plaintiff is able to return to work is not arbitrary. Rodney v. Crown-Zellerbach Corp., 470 So.2d 538, 545 (La.App. 1st Cir. 1985); Hayes v. Hammett Co., Inc., 442 So.2d 1277, 1279 (La.App. 3d Cir.1983). Therefore, the defendants' decision to terminate was justifiable at the time it was made and the trial court correctly found that the defendants were not arbitrary and capricious in discontinuing Mill's worker's compensation benefits at that point. Id.
However, the inquiry does not stop there. The Louisiana Supreme Court has summarized the law concerning penalties and attorney's fees in worker's compensation cases, as follows:
An insurer is required to make a reasonable effort to ascertain an employee's exact medical condition before benefits are terminated. If, subsequent to an initial optimistic report, an insurer receives medical information indicating continuing disability, the insurer may not blindly rely upon the earlier report to avoid penalties for arbitrary nonpayment of compensation benefits.
Johnson v. Insurance Co. of North America, 454 So.2d 1113, 1117 (La.1984). (Citations omitted.)
In the instant case, Dr. Diaz's reports completed almost immediately after he indicated that Mills could go back to some type of light-duty work negated that conclusion. Those reports, which were received by the compensation insurer, should have put the insurer on notice that Mills' disability was continuing. Once the subsequent medical reports indicating that Mills could not yet return to work were received by the insurer, the worker's compensation payments should have been reinstated. The defendants' failure to do so was arbitrary and capricious, entitling plaintiff to statutory penalties and attorney's fees under LSA-R.S. 23:1201.2.
Improper Calculation
The plaintiff also claims that he is entitled to penalties and attorney's fees because the defendants failed to investigate his claim for increased compensation. At trial, defendants stipulated that the plaintiff *329 was earning $320 per week at the time of the accident. The trial court found that he was entitled to $213.33 per week, as he claimed, rather than the $202.68 paid by the employer.
In Green v. Provencal Tie Mill, 392 So.2d 722 (La.App. 3d Cir.1980), the defendant had used the wrong formula to calculate the compensation payments. The court held that the defendant was arbitrary and capricious for not paying the correct compensation rate after the plaintiff made demand for that amount.
In the instant case, the record contains no explanation for the defendants' failure to pay the correct rate of compensation. The defendants willingly admitted the plaintiff's wages once the case went to trial. Calculation of worker's compensation benefits is accomplished through use of a simple formula. The plaintiff made judicial demand for the proper rate of compensation. The defendants' failure to pay the correct amount, even after plaintiff's judicial demand, was arbitrary and capricious. For that reason also, the plaintiff is entitled to penalties and attorney's fees.
We reverse the trial court's judgment denying the plaintiff statutory penalties and attorney's fees and award the plaintiff penalties equal to $200 or 15 percent of the face value of the check, whichever is greater, pursuant to LSA-R.S. 23:1201.2, plus $3,500 in attorney's fees.

SUPPLEMENTAL EARNINGS BENEFITS
Plaintiff contends that he is entitled to SEB under LSA-R.S. 23:1221(3)(a) because he earns only $7.00 per hour on the job he eventually found, while he was earning $8.00 per hour at Guaranty at the time of the accident.
LSA-R.S. 23:1221(3)(a) provides that an injured employee is entitled to SEB if he is unable to earn wages equal to 90 per cent or more of the wages he earned prior to injury. The plaintiff is required to prove this fact by a preponderance of the evidence. Williams v. Avondale Industries, Inc., 521 So.2d 491, 492 (La.App. 4th Cir. 1988). To determine whether the claimant has established a prima facie case for entitlement to SEB, the court must consider whether he presented sufficient evidence to prove he was unable to earn the requisite percentage of his pre-injury wages. Id. In this case, the plaintiff testified that the job he eventually found pays $7 per hour, less than 90 per cent of the $8 per hour wages he earned at Guaranty. Under the jurisprudence, that showing is sufficient to meet plaintiff's initial burden of proof.
The burden then shifts to the defendant to prove that the employee is physically capable of work that paid at least 90 per cent or more of his pre-injury wages and that such work was offered or is available in the employee's community or reasonable geographic region. Id. at 493; Culotta v. Great Atlantic and Pacific Tea Co., 524 So.2d 259, 262 (La.App. 5th Cir.), writ denied 530 So.2d 88 (La.1988). The defendants failed to meet that burden in the instant case. Nunez testified that Mills was offered a job as a lubricator on April 8, 1988. Plaintiff admits that Guaranty offered him a job, but stated that he had not been told that he could return to work at the time the offer was made. Additionally, plaintiff's doctor's reports subsequent to the date the job was offered indicated that plaintiff was unable to return to work at that time. More importantly, the defendants offered no evidence of the wages plaintiff would have earned had he taken the job as a lubricator.
Since the plaintiff established a prima facie case of entitlement to SEB, and the defendants failed to meet their burden of rebutting that evidence, the trial court improperly denied plaintiff's claim for SEB. We reverse on this issue and award the plaintiff SEB.
Under the 1986 amendments to the worker's compensation law, SEB payments should equal sixty-six and two-thirds per cent of the difference between the plaintiff's average monthly wages at the time of the injury and the average monthly wages actually earned thereafter. LSA-R.S. 23:1221(3). Average monthly wages are to be calculated as four and three-tenths *330 times the weekly wages, in this case $320 at the job with Guaranty and $280 at the job the plaintiff held at the time of trial. Therefore, the plaintiff's average monthly wages were $1,376 at Guaranty and $1,204 at his present job. His SEB payments are calculated as follows:
66 2/3 × ($1,376 - $1,204) = 66 2/3 × $172 = $114.66
The plaintiff is entitled to $114.66 in SEB payments every month.

CREDIT
The plaintiff claims that the trial court improperly applied a credit to the amount the defendants owe him because the defendants failed to plead or prove that they were entitled a credit as an affirmative defense. He notes that under La.C.C.P. art. 1005 the affirmative defense of "extinguishment of the obligation" must be set out in the answer. He says that he presented the only evidence of payment of any benefits in an attempt to prove that defendants paid the wrong compensation rate. In support of his argument, he cites Jackson v. Maloney Trucking & Storage, Inc., 442 So.2d 849 (La.App. 4th Cir.1983), writ denied 445 So.2d 441 (La.1984), where this court disallowed a social security offset because the defendant failed to plead the offset as an affirmative defense.
The defendants argue that the credit was proper under La.C.C.P. art. 1154, which allows the court to treat issues not raised by the pleadings if they have been "tried by express or implied consent of the parties." They claim the presentation of evidence of payment of benefits was sufficient to allow the court to extend the credit. They cite Martinez v. Dixie Brewing Co., 463 So.2d 628 (La.App. 4th Cir. 1984), writ denied 467 So.2d 537 (La.1985), in which the court allowed enlargement of the pleadings to include a statutory defense when the other party did not object to admission of evidence on the issue.
The case law on this issue indicates that a credit for worker's compensation payments previously made is not subject to the statutory defense rule argued by the plaintiff. In Lafleur v. Hartford Ins. Co., 449 So.2d 725, 729 (La.App. 3d Cir.1984), the court found that the trial court properly held that sums previously paid for which credit was due included both worker's compensation previously paid and wages earned. Likewise, in Bailey v. Zurich American Ins. Co., 503 So.2d 611, 615 (La. App. 4th Cir.1987), the court held that the trial court erred in failing to apply a credit for worker's compensation benefits previously paid to the plaintiff. Neither of those cases discussed the credit due as an affirmative defense which had to be pled in the answer. Therefore, we hold that this assignment of error has no merit.
Conclusion
For the above and foregoing reasons, the judgment of the trial court denying plaintiff Roland R. Mills statutory penalties and attorney's fees and denying him SEB is reversed. The plaintiff is awarded $200 in statutory penalties plus $3,500 in attorney's fees. Additionally, Mills is awarded $114.66 a month in SEB. In all other respects, the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; RENDERED.