583 So.2d 31 (1991)
Albert J. DUMAS
v.
The HARTFORD INSURANCE COMPANY, et al.
No. 90-CA-1753.
Court of Appeal of Louisiana, Fourth Circuit.
June 13, 1991.
Rehearings Denied July 17, 1991.
*32 Rudolph R. Schoemann, Schoemann & Associates, New Orleans, for plaintiff/appellee.
Monica C. Sanders, Frederick A. Miller & Associates, Metairie, for defendants/appellants.
Dona J. Dew, New Orleans, for Hibernia Nat. Bank.
Before KLEES, CIACCIO and PLOTKIN, JJ.
PLOTKIN, Judge.
Both parties to this worker's compensation suit have appealed the trial court judgment finding plaintiff Albert J. Dumas totally, temporarily disabled and awarding him additional worker's compensation benefits and additional medical expenses against the defendants, Hibernia National Bank and Hartford Insurance Co. We amend the judgment to clarify which additional medical expenses the defendants are liable to pay and to award the plaintiff penalties and attorney's fees. In all other respects, the trial court judgment is affirmed.

Facts:
Plaintiff Albert J. Dumas was injured February 19, 1988 in the course and scope of his employment as an engineer's helper at Hibernia National Bank, when he fell some ten to fifteen feet off a 20-foot ladder while attempting to change a light bulb in a chandelier in the bank's main office located at 812 Gravier Street in New Orleans. The plaintiff landed flat on his back on a marble table, hitting a triangularshaped calendar laying on the table. He claims that he injured his back, spine, neck, head, and lower extremities.
Immediately after the accident, the plaintiff was taken to the emergency room at Tulane Medical Center, where he was treated by a Dr. Kirby. He was subsequently treated by two other Tulane doctors, Ollie Edmunds, an orthopedist, and Leon Weisberg, a neurologist, for back pain, neck pain, and headaches. Dr. Edmunds diagnosed a soft-tissue injury, specifically a strain to the back and neck. Dr. Edmunds testified that the plaintiff refused to allow him to conduct examinations, that he failed to follow his recommendations for treatment, and that he missed several appointments for tests. Dr. Edmunds clearly believed that the plaintiff's soft tissue injury was resolved much sooner than the plaintiff admitted and that the plaintiff was malingering during the last few months he provided treatment.
Dr. Edmunds followed plaintiff for a year, then released him to return to work on February 16, 1989 when he decided that he could no longer help him because of his attitude. Plaintiff went back to work at Hibernia on March 2, 1989, but worked only a couple of hours before complaining of pain and leaving. Hibernia then terminated plaintiff's employment.
Subsequent to these events, on July 18, 1989, the plaintiff consulted Dr. Edna Doyle, a physical and rehabilitative medicine specialist, who diagnosed a mild sacroiliac disfunction and recommended therapy and a work hardening program. Dr. Doyle testified by deposition that the injury was caused by the work-related accident and that most doctors do not look at the sacroiliac joint when a patient comes in with a back problem. A problem in the sacroiliac could cause pain when the patient sits, Dr. Doyle stated. She recommended physical therapy two times a week for four to six weeks.
At the time of the accident, Dumas was earning $937.25 per month on his job with Hibernia. Additionally, Dumas was a member of the Louisiana National Guard, doing military police work, allegedly earning $66.77 per week. Hibernia paid him weekly workers' compensation of $195.23 for his salary from Hibernia from the time of the accident until the time he was released to return to work by Dr. Edmunds. Hibernia also paid him the difference between the amount paid by Hartford and his regular salary. Additionally, the defendants paid plaintiff's medical expenses incurred *33 in connection with his treatment by Drs. Edmunds and Weisberg, but did not pay other medical expenses, including those incurred in the consultation with Dr. Doyle.
On January 31, 1989, before his benefits were terminated, the plaintiff filed suit seeking increased benefits and additional medical expenses. Specifically, the plaintiff alleged that he was entitled to $216.15 per week because of his job with the military. The case was submitted to the trial judge on the basis of pleadings, depositions, and other documents. After reviewing the evidence, the trial court issued a judgment in favor of the plaintiff, finding him totally, temporarily disabled. The judge found that Dumas was entitled to $195.23 per week "pending further order of the court," with credit for the $10,152 in weekly benefits paid prior to the trial. The judge also ordered the defendants to pay "all outstanding medical, drug, and therapy bills, plus all necessary mileage at the rate of $.20 per mile, with interest." The plaintiff's request for additional benefits to compensate him for the salary he earned from the military prior to the accident was denied.
Both parties appealed. Hibernia and its insurer contest the trial court's ruling that Dumas was temporarily, totally disabled and the finding that Hibernia is liable for additional medicals and mileage. Regarding the additional medicals, the defendants argue specifically that they should not be liable for payment of expenses for treatment of plaintiff's cocaine addiction and that he should not receive an award for future medicals because he has previously refused to follow his physicians' recommendations. The plaintiff appeals the trial court's refusal to award him additional compensation for his second job, as well as the trial judge's failure to award penalties and attorney's fees for the defendants' arbitrary and capricious discontinuation of his workers' compensation benefits.

Total, Temporary Disability
Under the provisions of LSA-R.S. 23:1221, the plaintiff must prove that he was unable to engage in any self-employment or gainful occupation for wages before he may be found temporarily totally disabled for purposes of worker's compensation. Hibernia asserts that the trial court incorrectly found that the plaintiff had met that burden.
First, the defendants challenge the trial court's acceptance of Dr. Doyle's testimony, saying that the testimony of Drs. Edmunds and Weisberg is more credible than that of Dr. Doyle for two reasons. First, Hibernia notes that the Tulane doctors treated the plaintiff from the time of the injury for more than a year, when he was released to return to work. On the other hand, Dr. Doyle was not consulted until more than 18 months after the accident. Additionally, Hibernia claims that Dumas was referred to Dr. Doyle by his attorney.
Second, Hibernia claims that Dr. Edmunds' testimony was entitled to the most weight because he was Dumas' "treating physician." The defendants note that Dr. Edmunds saw the plaintiff 13 times over the course of more than a year, while Dr. Doyle saw the plaintiff only three times, beginning almost a year and a half after the accident. Additionally, the defendants claim that even if Dr. Doyle's testimony is given great weight, the trial court's holding that Dumas was temporarily, totally disabled is not supported by the record because Dr. Doyle herself said that she believed Dumas could have performed his job duties, even without the recommended physical therapy.
A constant refrain in all of Hibernia's arguments on this issue is the allegation that the medical evidence indicates that Dumas was malingering. The defendants place special emphasis on Dr. Edmunds' testimony that after a couple of months Dumas' physical complaints were inconsistent with the medical findings and that Dumas was deliberately trying to "manipulate" the examination process. Additionally, Hibernia cites the testimony that Dumas failed to follow doctor's orders without giving adequate explanation for the failure.
Finally, the defendants imply that many of Dumas' continuing problems are a result of his cocaine addiction, for which he *34 sought treatment two different times during the period he was being treated for his work-related injury. Hibernia claims that the evidence indicates that the plaintiff's drug problems began in high school, with alcohol and marijuana, and became more acute when he separated from his wife several years prior to the accident.
Dumas' arguments on this issue are simple. He says that the record contains adequate evidence to support the trial court's determination that he needs additional medical treatment for a "short, indefinite period" before returning to work. On the "treating physician" issue, Dumas claims that Dr. Doyle is entitled to that status because she is the only doctor he ever chose. He claims that he sought her help when the Tulane doctors chosen by his employer failed to help him. Additionally, Dumas claims that the insurance company placed the "malingering" idea in Dr. Edmunds' head and that Dr. Edmunds then became an "investigator" for the insurance company, which made him unable to properly treat him.
As for the drug problem, Dumas claims that his cocaine addiction is related to the work accident because he turned to street drugs when the medical attention failed to provide him any relief. Dumas claims that he is entitled to recover for damages caused by "improper medical care," as he terms his decision to use cocaine. He cites the presumption that injuries which appear after a work-related accident are presumed to be a result of the accident; he claims that he was relatively healthy prior to the accident.
Generally, the testimony of a treating physician is entitled to greater weight than that of a physician who sees a claimant for litigation purposes only. Harris v. Rumold, 518 So.2d 9 (La.App.4th Cir.1987); Sino v. Chalmette General Hospital, 489 So.2d 311 (La.App.4th Cir.1986). Additionally, the testimony of a doctor who treats a patient from the inception of an injury is generally entitled to greater weight than that of a physician who examines the patient at a much later point in time. Rodriquez v. American International Insurance Co., 394 So.2d 621 (La. App.2d Cir.1980).
Nevertheless, we find no manifest error in the trial court judgment finding the plaintiff temporarily, totally disabled. Although Dr. Edmunds' testimony is clear that he believed that there was nothing physically wrong with the plaintiff at the time he released him to return to work, Dr. Doyle's testimony that the plaintiff was experiencing a mild sacroiliac dysfunction even after Dr. Edmunds had released him is equally clear. Additionally, Dr. Doyle testified specifically that most doctors do not check the sacroiliac joint when a patient complains of back pain. Although Dr. Doyle did testify at one point that she thought that the plaintiff could perform his job while undergoing the therapy which she recommended, she later stated that she would recommend that he stay away from work until the sacroiliac problem was resolved if he could not avoid lifting, bending, and twisting.
The defendants presented no evidence to indicate that the plaintiff could perform his job within the restrictions imposed by Dr. Doyle; in fact Michele E. Lockhart, vice president of employee relations at Hibernia, testified that the plaintiff would be required to stoop, bend, and climb while performing his job. Thus, the trial judge could reasonably have concluded that the plaintiff's disability was continuing at the time of the trial. Additionally, the trial court decision to accept the testimony of one expert witness over the conflicting testimony of another expert can never be manifestly erroneous. Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106, 1111 (La.1990), Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Thus, we affirm the trial court decision awarding Dumas worker's compensation benefits because he is temporarily, totally disabled.

Defendants' Liability for Additional Medicals and Mileage
The defendants claim that they should not be required to pay the costs for Dumas' drug therapy because there is no evidence *35 that the drug problem is related to the work-related injury. They also note that the judgment apparently requires that they pay the cost of two CAT scans and an EMG study ordered by Dr. Weisberg and performed at Tulane subsequent to Dumas' release by Dr. Edmunds, as well as the cost of the consultations with Dr. Doyle and the future physical therapy recommended by Dr. Doyle.
As stated previously, the plaintiff claims that his drug abuse problem is related to the work-related accident because he allegedly turned to street drugs to prevent pain when the medication prescribed by his doctors was ineffective. Additionally, the plaintiff argues that recovery is not barred where pre-existing conditions are aggravated or exacerbated by work-related accidents.
Concerning the costs incurred in his consultation of Dr. Doyle, Dumas cites LSA-R.S. 23:1121(B), which gives the employee the right to select a "treating physician." He notes that the trial court obviously based his decision in large part on Dr. Doyle's testimony. Thus, says the plaintiff, the defendants should pay the costs for her services.
LSA-R.S. 23:1203 requires only that the employer pay for all "necessary medical, surgical and hospital services, and medicines." The trial judge ordered the defendant to pay "all outstanding medical, drug, and therapy bills, plus all necessary mileage at the rate $.20 per mile, with interest." We find no error in this ruling, but believe that it requires some clarification under the circumstances presented by this case.
The cost of plaintiff's consultations with Dr. Doyle are certainly necessary medical expenses in light of our earlier decision that the trial court properly accepted her testimony concerning the plaintiff's continued disability. This is also true since Dr. Doyle was the only doctor who diagnosed the plaintiff's sacroiliac dysfunction. The costs of the therapy recommended by Dr. Doyle are also necessary expenses for the same reason. Additionally, the cost of the two CAT scans and the EMG study performed at Tulane on Dr. Weisberg's orders fall into the category of necessary expenses. Dr. Doyle's diagnosis indicates that the plaintiff continued to experience pain after he was released by Dr. Edmunds; thus, the plaintiff's insistence that further tests be performed was reasonable and the defendants should be held liable for the costs of those tests.
On the other hand, the defendants cannot be held liable for payment of the costs of plaintiff's drug abuse therapy, even if the cocaine use was precipitated by the workrelated accident. As a matter of public policy, the plaintiff's decision to forego legal medical treatment in preference for the use of illegal drugs cannot be sanctioned. Other avenues for relieving the pain of the back injury were available.

Additional Compensation for Military Pay
This issue is controlled by LSA-R.S. 23:1031, which provides, in pertinent part, as follows:
In case any employee for whose injury... payments are due is, at the time of the injury, employed and paid jointly by two or more employers subject to the provisions of this Chapter, such employers shall contribute to such payments in proportion to their several wage liabilities to the employee....
This court has previously held that the above provision applies only to "joint employers," and does not apply where there is no "common interest or control" between the two employers. Casby v. Aurora Country Club, 503 So.2d 166, 167 (La. App.4th Cir.1987). See also Lott v. Louisiana Power & Light Co., 377 So.2d 1277 (La.App.3d Cir.1979). Since there is no common interest or control in the instant case, the trial court correctly calculated plaintiff's worker's compensation payments on the basis of his salary at Hibernia alone. Thus, we affirm the trial court decision on this issue.

Penalties and Attorney's Fees
Under the provisions of LSA-R.S. 23:1201.2, the plaintiff is entitled to penalties and attorneys' fees for the defendants' *36 failure to pay worker's compensation benefits the entire period the plaintiff was disabled only if the discontinuation was "arbitrary, capricious, or without probable cause." This court has previously held, in Mills v. Guaranty Industrial Contractors, Inc., 557 So.2d 326 (La.App.4th Cir. 1990), that an insurer can be liable for penalties and attorneys' fees even if it properly discontinues benefits on the basis of a doctor's report, if it fails to reinstate benefits after receiving a subsequent report indicating continuing disability. Although Dr. Doyle's deposition reveals that she found a continuing disability even after Dr. Edmunds had released the plaintiff, the defendants claim that they never received notice of Dr. Doyle's diagnosis until she was deposed about a week prior to trial. Since the defendants were unaware of the conflicting report, they did not act arbitrarily, capriciously, and without probable cause in relying on Dr. Edmunds opinion that the plaintiff was no longer disabled. Thus, the trial court correctly rejected the plaintiff's request for penalties and attorney's fees.

Conclusion
The trial court judgment is amended to clarify the fact that the defendants are liable for all medical expenses incurred by the plaintiff, including his consultations with Dr. Doyle and the medical tests at Tulane, as well as the cost of physical therapy recommended by Dr. Doyle. The defendants are not liable for the costs of the plaintiff's drug therapy. In all other respects, the judgment is affirmed.
AMENDED AND AFFIRMED.