732 So.2d 147 (1999)
Marie GROSS
v.
MAISON BLANCHE, INC.
No. 98-CA-2341.
Court of Appeal of Louisiana, Fourth Circuit.
April 21, 1999.
*148 Anthony J. Russo, Dean J. Favret, Favret, Demarest, Russo & Lutkewitte, New Orleans, Louisiana, Attorneys for Plaintiff/Appellee.
Kenny M. Charbonnet, William V. Renaudin, Jr., Metairie, Louisiana, Attorneys for Defendant/Appellant.
Court composed of Judge MOON LANDRIEU, Judge JAMES F. McKAY III, Judge JAMES A. GRAY II.
McKAY, Judge.
The defendant Maison Blanche appeals an adverse ruling from a judgment arising from a worker's compensation claim by Marie Gross, an employee of Maison Blanche, Inc., and rendered in her favor.
On June 11, 1998, the Compensation judge, found the defendant Maison Blanche arbitrary and capricious based on its termination of Ms. Gross' weekly wage benefits, refusal of medical treatment and refusal to authorize a second neurological opinion. Pursuant to La. R.S. 23:1201(E); the trial court awarded attorney's fees in the amount of $7,500.00 plus statutory penalties. On July 9, 1998, the trial court rendered Reasons for Final Judgment as follows:
"... [D]efendant offered no proof of its reasons for not reinstating and/or failing to reinstate worker's compensation benefits after it received the negative report from claimant's doctor indicating her disability status and need for further neurological testing. Defendant relied on previously obtained medical opinions, which it is not entitled to do under law. Defendant failed to further investigate the request for medical treatment and indemnity benefits but instead relied on earlier obtained medical opinions. This was arbitrary and capricious conduct by defendant."
On October 25, 1996, plaintiff, while acting in the course and scope of her employment as a cosmetician at Maison Blanche, received an electrical shock from a cosmetic display counter. As a result of the shocks plaintiff was thrown against an upright case and allegedly sustained injuries to her head, neck and spine. She was initially treated for one week with her employee's physician, Dr. Axelrod, for complaints of headaches, shooting pains down her right shoulder and arm as well as pain in her back and right leg. He prescribed muscle relaxers and placed her on no work status until October 30, 1996. He recommended physical therapy but advised her that she could return to work on November 4, 1996.
Thereafter she treated with her orthopedic surgeon Dr. Bourgeois for the alleged injuries to her head, neck and back. He diagnosed her as suffering from an electrocution injury with cervical, thoracic and lumbar myofascial strain and hamstring strain on her left side. He placed her on no work status from October 31, 1996 *149 through January 7, 1997. In January of 1997, Dr. Bourgeois referred Ms. Gross to Dr. Trahant, a neurologist. He treated her for continued complaints of headaches and vertigo from January 1997 through May 7, 1997. When he found no neurological improvements he recommended that she seek a second neurological opinion and on May 7, 1997, he discharged her to return to work. Based on Dr. Trahant's May 7, 1997 report, Maison Blanche terminated Ms. Gross weekly wage benefits and refused to authorize a second neurological opinion.
Dr. Bourgeois continued to treat Ms. Gross from May 1997, through April of 1998. He continually sent progress reports to Maison Blanche's adjuster, Ms. Dodd, apprising her that Ms. Gross was still on no work status. Additionally, he continued to recommend physical therapy for Ms. Gross, to which Maison Blanche was unresponsive. Furthermore, Maison Blanche continued to pay him for his medical services throughout his treatment of Ms. Gross.
On June 27, 1997, counsel for Ms. Gross forwarded a letter to Ms. Dodd demanding a reinstatement of wage benefits to Ms. Gross. Thereafter, counsel forwarded by certified mail to Ms. Dodd a supplemental report from Dr. Trahant, dated September 17, 1997, wherein he specifically yielded to the opinion of Dr. Bourgeois concerning Ms. Gross inability to return to work. In this correspondence counsel again requested that plaintiff's weekly wage benefits be reinstated and requested authorization for a second neurological opinion. Maison Blanche did not authorize the physical therapy until February 8, 1998, and the authorization for a second neurological opinion was not verified until March 11, 1998. Furthermore, Ms. Gross was not reinstated to her weekly wage benefits until March 23, 1998, after the instant suit was filed. On March 23, 1998, the workers' compensation carrier reinstated Ms. Gross' benefits and issued a check in the amount of $9,609.86 representing the past due and owing wage benefits from May 7, 1997, through March 23, 1998, a period of 320 days after terminating Ms. Gross' benefits.
The sole issue at trial was whether Maison Blanche acted arbitrary and capricious in refusing to authorize a second neurological opinion, in refusing to authorize physical therapy and in terminating Ms. Gross' weekly wage benefits from May 7, 1997 through, March 23, 1998.

STANDARD OF REVIEW
The determination of whether an employer should be cast with penalties and attorney's fees in a workers' compensation case is essentially a question of fact and the trial court's findings shall not be disturbed at the appellate level absent manifest error. Price v. City of New Orleans, 95-1851 (La.App. 4 Cir. 3/27/96), 672 So.2d 1045, writ denied 96-1016 (La.10/25/96), 681 So.2d 360.

ASSIGNMENT OF ERRORS:
The appellant alleges, that the Worker's Compensation judge erred in finding Maison Blanche arbitrary and capricious based on the following: failing to reinstate wage benefits to the claimant, failing to re-investigate the medical status of claimant after receiving a negative report from her neurologist, refusing to authorize a second neurological evaluation and failing to authorize physical therapy. The appellant also alleged that the hearing officer erred in awarding attorney's fees and penalties.

LAW
La. R.S. 23:1201(F) in pertinent parts provides that:
[F]ailure to provide payment in accordance with this Section shall result in the assessment of a penalty..., together with reasonable attorney fees for each disputed claim...
§ 1 "Such penalties and attorney's fees shall be assessed against the employer or the insurer, depending upon fault..." *150 La. R.S. 23:1201.2 in pertinent part provides that:
[A]ny employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims...

ARGUMENT
In the instant case the defendant relied on the medical discharge by only one of Ms. Gross treating physicians to base their discontinuance of her weekly wage benefits. From the record, it is clear that the defendants were aware that there was another treating physician, Dr. Bourgeois, whom the defendant consistently paid for medical services rendered to Ms. Gross. He was also steadfast in his recommendation that she remain on a no work status. An employer must demonstrate that reasonable efforts were made to ascertain the worker's exact condition before denying benefits and employers have an ongoing duty to review medical reports concerning disability. Blanque v. City of New Orleans, 92-1313, 612 So.2d 948 (La.App. 4 Cir. 1/14/93). The Supreme Court in Johnson v. Insurance Co. of North America, 454 So.2d 1113 (La. 1984) stated that, "If, subsequent to an initial optimistic report, an insurer receives medical information indicating continuing disability, the insurer may not blindly rely upon the earlier report to avoid penalties for arbitrary nonpayment of compensation benefits." Id. at 1117. In the instant case on September 17, 1997, Dr. Trahant coalesced to Dr. Bourgeois no work status opinion, yet, the defendants still continued to deny Ms. Gross weekly wage benefits. By not reinstating her benefits, the defendants invoked the "arbitrary and capricious" standard pursuant to La. R.S. 23:1201.2. In Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985, 988 (La.1976), the Court stated, "if subsequent to an initial optimistic report, an insured receives medical information indisputably showing disability at a subsequent date the insurer may not blindly rely upon the early report and solely on this basis avoid penalties for arbitrary non-payment of compensation benefits indisputably due a disabled workman."
Furthermore, in Mills v. Guaranty Indus. Contractors, Inc., 557 So.2d 326, 328 (La.App. 4 Cir.1990), this court found that once subsequent medical reports indicating that the employee could not yet return to work were received by the insurer, the worker's compensation payments should have been reinstated. The defendant's failure to do so was arbitrary and capricious, entitling plaintiff to statutory penalties and attorney's fees under La. R.S. 23:1201.1.
In the instant case, on May 7, 1997, Dr. Trahant released Ms. Gross to return to work with the recommendation that she seek a second neurological opinion. On September 17, 1997, the defendant was notified by a supplemental report from Dr. Trahant, which yielded to Dr. Bourgeois' report, keeping Ms. Gross on a no work status.
Furthermore, in this case the insurer based its discontinuance of Ms. Gross' weekly wage benefits on the May 7, 1997, release of Dr. Trahant, her neurologist. Conversely, Dr. Bourgeois continued to endorsed a no work status throughout the complained of period and was continuously paid for his medical services by the defendant. He also consistently recommended physical therapy, which the defendants continually refused to authorize. Moreover, despite Dr. Bourgeois' reports, the defendants, by their own testimony, elected to rely on Dr. Trahant's discharging Ms. Gross to return to work and referring to him as her primary physician. Notwithstanding Dr. Trahant's advice that Ms. Gross seek a second neurological opinion after he discharged her, the defendants chose not to authorize the second opinion, thereby creating a pattern of arbitrary and *151 capricious behavior and invoking the "arbitrary and capricious" standard pursuant to La. R.S. 23:1201.2. As stated in McGaughey v. City of New Orleans, 96-1331 (La. App. 4 Cir. 5/28/97), 695 So.2d 1109, 1115; "An employer clearly has a duty to investigate a claim prior to denying compensation." See Allen v. Misco Paper, 27, 146 (La.App. 2 Cir. 8/23/95), 660 So.2d 175 and Bundren v. Affiliated Nursing Homes Inc., 94-808 (La.App. 3 Cir. 2/1/95), 649 So.2d 1177,
The plaintiff argues that the defendant was in bad faith in failing to authorize a second medical opinion as recommended by Dr. Trahant and refusing to authorize physical therapy as recommended by Dr. Bourgeois.
Ms. Dodd, testified that they relied solely on Dr. Trahant's report and that they knew that Dr. Bourgeois was treating Ms. Gross for orthopedic rather than neurological problems. Ms. Dodd also confirmed that she had received Dr. Bourgeois reports and knew that he had placed Ms. Gross on no work status and that Dr. Trahant had yielded to Dr. Bourgeois opinion as evidenced in the supplemental report of September 17, 1997. There is no "good faith" defense to the actions of the defendant. In fact the defendant asserted that there were new symptoms that developed after the original injury based on a post injury incident where the plaintiff fell in her neighbor's driveway. The new area complained of was her left elbow, left knee and chest instead of her right side. However, at the time of the denied benefits the defendant had no knowledge that the plaintiff had fallen and injured herself between Dr. Trahant's discharge on May 7, 1997 and again seeing Dr. Bourgeois on May 23, 1997. The defendant did not reinstate the payment until after suit was filed and the deposition of Dr. Bourgeois was taken. In his testimony Dr. Bourgeois was adamant that the plaintiffs new fall in no way aggravated the original injuries. This is inconsequential considering this case was not based on a cause issue but only to determine if the defendants were arbitrary and capricious and deserved the awarding of penalties and attorneys' fees against them.
An employer's refusal to authorize medical treatment, which is reasonable and necessary, warrants an award of attorney's fees and penalties. Brasseaux v. Abbeville General Hospital, 97-1062 (La.App. 3 Cir.), 710 So.2d 340, writ granted in part, judgment reversed in part 98-1066 (La.6/5/98), 720 So.2d 673. Whether or not an employer's refusal to pay workers' compensation benefits is arbitrary, capricious, or without probable cause within the meaning of the attorney's fees provision depends on facts known to the employer at the time of its actions, and the failure to pay, is not arbitrary and capricious when it is based upon substantial bona fide factual contention. Cook v. Kaldi's Coffee House, 97-0979 ( La.App. 4 Cir. 1/28/98), 706 So.2d 1052. An employer must demonstrate that reasonable efforts were made to ascertain the worker's exact condition before denying benefits and employees have an ongoing duty to review medical reports concerning disability. Blanque v. City of New Orleans, supra
Dr. Trahant suggested that the plaintiff could return to work with some pain and that she could get a second neurological opinion. Dr. Bourgeois ordered physical therapy and continued to recommend that Ms. Gross remain on no work status. The defendant did nothing to evaluate or ascertain the exact condition of the worker before they discontinued her benefits but elected to rely on Dr. Trahant's opinion. Accordingly, the hearing officer did not err in finding that Maison Blanche was arbitrary and capricious in failing to reinstate indemnity benefits for May 7, 1997 thru March 23, 1998.
The hearing officer awarded Ms. Gross $7,500, in attorney's fees and statutory penalties. This amount was awarded after drawing a reasonable inference from the events which took place both before *152 and after trial. In addition, the trial court considered the reasonable amount of time spent by counsel for Ms. Gross and the value of the services provided by counsel in its award. The discretion lies with the hearing officer, As such, the award of attorney's fees for the time and value of services rendered up until the filing of this appeal should not be disturbed.
Furthermore, Ms. Gross contends that the hearing officer's award of attorney's fees should be increased for the additional effort expended at the appellate level. This court has the inherent authority to review the reasonableness of any attorney fee award. Gravolet v. Board of Commissioners for the Grand Prairie Levee District, 95-2477 (La.App. 4 Cir. 6/12/96), 676 So.2d 199, 206, citing, State Dept. of Transp. and Development v. Williamson, 597 So.2d 439 (La.1992). An insured who successfully defended the insurer's appeal challenging the trial court's award of statutory penalties and attorney's fees was entitled to an award for appellate level attorneys fees. Warner v. Liberty Mutual Fire Insurance Company, 543 So.2d 511 (La.App. 4 Cir.1989). Furthermore, "An increase is appropriate when the defendant appeals, obtains no relief, and the appeal has necessitated additional work for the plaintiff's counsel, provided the plaintiff properly request the increase." La. C.C.P. art 2133; Nowlin v. Breck Construction Company, 30-622 (La. App. 2 Cir. 6/24/98), 715 So.2d 112, 116; citing, Smith v. Tutor Const. Co., 25,783 (La.App. 2 Cir. 5/4/94), 637 So.2d 666. The appellee filed her answer with this court requesting the increase in attorney's fee for the defense of the instant appeal and re-urged her claim in her opposition brief thereby resulting in the proper foundation being laid for this request before us. Thereupon, for all of the above authority, we agree and award the appellee's counsel $2,500.00 for his expenses and time in the defense of this appellate matter. Accordingly, the decree of the trial court is amended to award an additional $2,500.00 in attorney fees for the appeal plus costs of this appeal are to be borne by the defendant/appellant.
AFFIRMED AND AMENDED.
LANDRIEU, J., CONCURS IN RESULT.