JjDOUCET, Chief Judge.
In this suit arising out of a two vehicle accident, plaintiff, Arthur Chatman, appeals a judgment of the district court finding him 20% at fault in the accident. He also appeals the quantum of general damages awarded as being so low as to constitute an abuse of discretion and the amount of medicals awarded as not being in conformity with the evidence. Finally, he argues the trial court erred in adopting the medical opinion of defendant’s physician over his own doctor’s opinion. We affirm.
FACTS
At approximately 3:40 P.M. on January 21, 1993, plaintiff, Arthur Chatman, was driving his 1970 Buick Electra south on South Washington Street in Opelousas. Joseph C. Buck, an employee of the city of Opelousas, was driving a 1976 GMC pickup truck, owned by the city, west on West Jefferson Street at this same time. As it approaches [⅜ “T” intersection with South Washington Street, West Jefferson crosses a railroad track. Both drivers were accompanied by passengers in their respective vehicles: Mr. Chat-man was accompanied by Ray Dunbar; and Mr. Buck’s passenger was Floyd Leger, a fellow employee.
Both drivers denied seeing the other vehicle before the accident. Mr. Leger also denies seeing the other vehicle before impact; while Mr. Dunbar stated that he saw the city’s truck when the automobile in which he was riding was approximately halfway between Halphen and Jefferson Streets, a distance of about 80 feet. Dunbar also stated that, after the accident, plaintiff told him that he (plaintiff) thought the truck was going to stop. This contradicts the plaintiffs own statement that he did not see the city vehicle before impact.
Officer Darryl Brasseur, who investigated the accident for the Opelousas Police Department, testified that the collision occurred just past the stop sign on Jefferson, but not into the intersection of Washington and Jefferson. Testimony tentatively placed the stop line on Jefferson even with the stop sign about seven *213 feet from the comer. Additionally, testimony estimated the speed of the Chatman vehicle at 10 to 15 m.p.h. and the city track at not more than 4 m.p.h. Officer Brasseur classified the damage to Mr. Chatman’s car as light; the city’s track was not damaged.
Although Officer Brasseur’s report indicated there were no injuries in the accident, Mr. Chatman stated he complained of back pain to the officer. However, Mr. Chatman refused medical assistance at that time and did not seek any care until he went to the Veterans Administration Hospital (the VA) in Alexandria two weeks later.
At trial, Mr. Chatman testified that he experienced immediate neck pain and low back pain which extended into both legs. While plaintiff stated that he first sought medical treatment at the VA for these symptoms two weeks after the accident, the Igcourt was neither supplied with any depositions from V.A. doctors nor were any VA physicians called at trial. Records from the VA and histories given by plaintiff to other physicians establish that Mr. Chatman had been treated at the VA for a number of years for chronic neck, back and right hip problems; and that he had a total replacement of his right hip performed there in 1986 and again in 1992. The records also indicated that Mr. Chatman has had a weight problem for some time and that he had been encouraged to lose weight in the hope that doing so would ease his chronic back pain.
Mr. Chatman’s other medical records (non-V.A.) reveal that he has also been treated by private physicians for neck and back problems dating back into the 1970’s. Dr. John Jackson indicated that he had been treating plaintiff since 1977; performing lumbar surgery on Mr. Chatman in 1977 and cervical surgery in 1979.
The record further establishes that Mr. Chatman was treated by Drs. Jackson and Humphries and by various physicians at the VA for complaints that plaintiff attributes to the accident at issue. It appears that following this accident, he first consulted his physician at the VA two weeks after the collision. Not being satisfied with the treatment rendered, he decided to consult Dr. Humphries, whom he saw for the first time in connection with the accident on February 8, 1998. He apparently brought x-rays taken at the VA with him. Those x-rays were negative for any recent injury. Dr. Humphries undertook conservative treatment of plaintiff with medication and physical therapy. Dr. Hum-phries testified that, in his opinion, Mr. Chat-man had reached maximum medical improvement as to his back by the end of April. However, Mr. Chatman continued to complain and, in October or November 1993, Dr. Humphries referred plaintiff back to Dr. Jackson, who had treated him in the past.
|4Pr. Jackson saw Mr. Chatman on November 18,1993. Plaintiff complained of low back pain radiating into both hips and down both legs to the knees, with pain occasionally extending to the soles of both feet accompanied by numbness in the feet. Dr. Jackson recommended a myelogram and post myelo-gram CAT scan. Dr. Humphries agreed with this recommendation and the tests were scheduled. According to Dr. Humphries, the results “... revealed chronic degenerative changes and postsurgical changes in his previous operative site in the lumbar area. They showed hypertrophy, which is spurs, arthritis type changes in these lumbar facet joints. They showed some narrowing at, what we refer to as stenosis, at the L4-5 level, some bulging of the disc at that level as well, which goes along with some slippage and narrowing. These are chronic type changes.” (Emphasis added.)
Both doctors Jackson and Humphries opined that the pain plaintiff described post accident was the same type pain he complained of before the accident. Dr. Jackson stated that he felt the plaintiff’s back pain was probably due to his L4-5 slippage, and that the accident could have caused his pain (which was preexisting) to worsen.
Dr. Humphries concluded that lumbar surgery was not warranted, stating the following: “... his pain is back pain, and this could be based simply on his back mechanical dysfunction. He’s got, you know, mechanically, a dysfunctional back. He’s got degenerative changes, he’s overweight, he’s had previous surgeries, he’s got scar tissue, and so forth. Basically, all these things can account for the *214 back pain and neck pain as well.” Dr. Hum-phries concluded that while the accident may have aggravated plaintiffs preexisting conditions, by the time of his (Dr. Humphries’) deposition, plaintiff was back to his pre-inju-ry status.
Dr. Jackson, on the other hand, would opt for surgical intervention. He believes that plaintiffs pain is attributable to slippage at the L4-5 fusion site and stated that 15without x-rays taken within a short period of time before the accident, it was impossible to determine if the slippage predated the accident. We note with interest that plaintiff changed his civilian treating physician from Dr. Hum-phries to Dr. Jackson once both doctors’ opinions were communicated to him.
In connection with this suit, Mr. Chatman underwent an I.M.E. by Dr. Frazer Gaar in January 1995. Dr. Gaar opined that plaintiffs neck, back and hip problems were associated with chronic degenerative changes which have taken place over the last 10 to 15 years; and that any injury suffered by the plaintiff in the accident would have resolved within 4 to 6 months. In his deposition, he stated, “His [Mr. Chatman’s] problems are that he has had previous injuries or changes or arthritic changes in these areas, and these areas have all been operated [on], and these areas are still somewhat of a problem for him because of the associated degenerative changes that accompany, say a neck fusion or a back fusion, and after these areas undergo fusions, then over the period of time and years, other areas below or above these fused areas begin to degenerate somewhat more at an accelerated rate because of the rigid fusion, and this is what I have seen here, [sic] These facet joints are undergoing a lot of chronic changes, but they indeed are changes, and this is the usual ageing process of previously] fused spinal areas, and that’s what I’m referring to, not congenital.” He concluded that “ ... in this case, I have not seen that there has been anything made worse by this motor vehicle accident.... I don’t think his accident had anything to do with his back slipping. I think that’s all been there and ongoing for a number of years.”
LAW AND DISCUSSION
The alleged errors argued by plaintiff on appeal involve factual findings and discretionary awards by the trial judge. These issues are reviewed on appeal under the doctrines of “manifest error” and “abuse of discretion.” The doctrine of manifest |6error was discussed earlier this year by the Louisiana Supreme Court in the case of Ferrell v. Fireman’s Fund Insurance Co., 94-1252, pp. 4-5 (La. 2/20/95), 650 So.2d 742, 745-746, wherein the court stated:
In Rosell v. ESCO, 549 So.2d 840 (La.1989), we synthesized the “manifest error” and “clearly wrong” appellate review of facts limitations that have been handed down by this court in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) and Canter v. Koehring, 283 So.2d 716 (La.1973) and the United States Supreme Court in Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969), and United States v. U.S. Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948), as follows:
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. * ⅜ * The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the findings in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be mani *215 festly erroneous or clearly wrong. * * * In applying the manifestly erroneous—clearly wrong standard to the findings below, appellate courts must constantly have in mind that their review function is not to decide factual issues de novo.
When findings are based on determinations regarding the credibility of witnesses, the manifest error—clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and |7a factfinder’s finding is based on its decision to credit the testimony of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Id. at 844-45 (citations omitted).
Our opinion in Stobart v. State, 617 So.2d 880 (La.1993), was not intended to change that synthesis or to make the scope of appellate review of facts any more limited than described in Rosell, Arceneaux, Canter, et al., supra.
In his reasons for judgment, the trial judge gave the following explanation for assessing both parties with some degree of fault in causing the accident:
Plaintiff and Buck give different versions of how the accident occurred. Both Buck and Floyd Leger, a passenger in the City’s vehicle testified they never saw plaintiffs vehicle prior to the collision. Plaintiff testified that he never saw the City’s vehicle prior to the collision!... ] The Court concludes that neither plaintiff nor Buck was keeping a proper lookout and did not see each other’s vehicles.
The Court cannot conclude specifically where, in the area of the intersection, the collision between the two vehicles occurred. However, I have no difficulty in concluding both parties were at fault for failing to keep a proper lookout.
The trial judge, noting that Buck had a stop sign and plaintiffs position was superior, went on to assess defendants with 80% and plaintiff with 20% fault in causing the accident. We find no manifest error in this determination.
Plaintiff also complains that the trial judge erred in placing more weight on the opinion of Dr. Gaar, who performed an I.M.E., than on that of plaintiffs treating physicians. The trial judge’s reasons for judgment do not support plaintiffs allegation. Those reasons show that the trial judge considered the opinions of all three of the doctors who examined and/or treated Mr. Chatman, as well as the medical records from the V.A. Hospital. Further, while it is well settled that “... the testimony of a treating physician is generally entitled to greater weight than that of a physician who sees a claimant for litigation purposes only, ... a trial court’s decision to accept the testimony of one expert over that of another can virtually never be manifestly erroneous. Dumas v. Hartford Ins. Co., 583 So.2d 31 (La.App. 4 Cir.1991)”. Arabie v. City of Eunice, 629 So.2d 465, 468 (La.App. 3 Cir.1993). We find nothing in this case which would support our reversing the findings of the trial judge.
The remainder of plaintiffs argument has to do with the quantum of damages awarded. He complains that the special damages awarded did not conform with the evidence and that the general damages awarded were so inadequate so as to be an abuse of the trial judge’s much discretion. The trial judge, in his reasons for judgment, stated that he found plaintiffs bulging disc was not caused by the accident at issue but rather by the aging process, that “... plaintiff would have suffered many of the aches and pains he ... experienced after the accident even in the absence of the accident” and that plaintiff was involved in a subsequent *216 accident which also aggravated his preexisting conditions. He further concluded that “[m]any of the medical expenses that were introduced by the plaintiff [could] be attributed to the treatment of conditions that would have occurred even in the absence of the accident.” Based upon those findings, and the fact that the accident in the case at bar was “... the product of a slight impact,” (plaintiff claimed he was traveling at no more than 15 m.p.h. and defendant estimated his speed at 2 m.p.h.) the trial judge awarded plaintiff $2,000.00 in past medicals, $1,000.00 in future medicals and $6,500.00 in general damages.
The standard of review of damage awards is well settled:
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck [v. Stevens, 373 So.2d 498 (La.1979)] to the present case is that the discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the |9effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, — U.S. -, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
The plaintiff before the court has a long and complicated medical history. The evidence presented established that his symptoms and his frequency of visits to his doctors both before and after the accident were, for the most part, identical. As we see it, the question before the trial judge was what increase in pain did the accident cause and for how long did this increased pain persist. While this court may disagree with the damages awarded by the trial court, we cannot say, that under the circumstances of the case, the award is “... beyond that which a reasonable trier of fact could assess.”
Accordingly, for the reasons stated above, the judgment of the trial court is affirmed. All costs of this appeal are assessed against plaintiff, Arthur Chatman.
AFFIRMED.
COOKS, J., dissents and assigns reasons.