JiDOUCET, Chief Judge.
Defendants, Dr. James Lowry and the Louisiana Medical Mutual Insurance Company, appeal a judgment of the trial court finding Dr. Lowry’s treatment of plaintiffs traumatic amputation of his left ring finger was below the applicable standard of care and awarding plaintiff, Kenneth Wade Roberts, $175,000.00 in general damages plus medical expenses. Mrs. Jan Roberts was also awarded damages for her loss of consortium. Defendants do not question the quantum of the medical damage award, nor do they question the quantum of the award for loss of consortium made to plaintiff, Jan Roberts, the wife of plaintiff, Kenneth Wade Roberts. We affirm.
REACTS
On the morning of November 18, 1987, plaintiff, Kenneth Wade Roberts (hereinafter Wade or Roberts), who was on his way home from duck hunting, stopped to check a noise his father-in-law had reported in Roberts’ combine. While under the combine, attempting to locate the source of the noise, Wade’s hand became entangled resulting in the traumatic amputation of his left ring finger. Wade reported that the axle of the combine engaged his finger, degloving it from his hand. He stated that as the combine de-gloved his finger, the ligament in his finger became attached to, and started to wrap around, the axle. In order to keep his hand and arm from being drawn into the machinery, Roberts said he had to grasp his left wrist with his right hand and pull backwards until the ligament snapped and was retracted into his wounded hand.
*1326 Plaintiff wrapped his hand in a shirt, retrieved his finger from under the combine, and obtained transportation to Allen Parish Hospital. He arrived at the hospital at about 9:00 A.M. to find no orthopaedic doctor on duty. His father-in-law and wife arrived shortly thereafter. The doctor on call to the hospital did not feel comfortable handling Wade’s injury and suggested Dr. James Lowry, an orthopaedic surgeon, be contacted. Dr. Lowry was contacted, agreed to take the case, and arrived at the hospital sometime later. The exact time Dr. Lowry arrived at the hospital is one of the matters in dispute.
Dr. Lowry cleaned and dressed the wound, gave Wade prescriptions for an analgesic and an antibiotic, and released him. Also in dispute is whether Roberts was administered I.V. Rocephin® the morning of the accident, to what extent the patient’s arm and hand were cleaned before the wound was treated, and what instructions Wade was given upon discharge.
13It is not disputed that Roberts began experiencing pain uncontrolled by the prescribed oral analgesics and had to return to the emergency room at approximately 3:00 A.M. the next morning. At that time he was given an injection to relieve his pain and instructed to return if his pain continued to be unresponsive to the oral analgesics prescribed by Dr. Lowry.
At about 6:30 A.M. November 19, 1987, Mrs. Roberts called Dr. Lowry to request that her husband be admitted into the hospital so that his pain could be better managed. Dr. Lowry agreed to honor her request and Mrs. Roberts transported her husband to the hospital. Although Wade was given injections to relieve his pain and had his hand and vital signs checked by the nurse at the hospital, he was not seen by Dr. Lowry until after 1:00 P.M. At that time, because of persistent complaints from his patient, Dr. Lowry unbandaged his hand and discovered it to be infected. Upon finding the wound was infected, Dr. Lowry ordered three separate I.V. antibiotics be administered: Rocephin®, Garamyein®, and Flagyl®. He also suggested that Wade be transferred to a facility which had a hyperbaric oxygen treatment capability. Arrangements were made and Roberts was transferred to Lake Charles Memorial Hospital.
At Lake Charles Memorial, Dr. Nathan Cohen assumed Wade’s care. Dr. Cohen identified the infection as being caused by Clostridia and told the family that he was not sure he could save Wade’s hand. Wade was placed under general anesthesia and his hand was surgically opened from the site of the amputation to the crease in his wrist. The wound was debrided and extensively irrigated with antibiotic solution, drains were placed in the incision, and the skin was loosely closed at multiple sites to protect the median nerve and to allow appropriate whirlpool therapy. This same procedure was repeated for a second time on November 23, 1987, and for |4a third time on November 25, 1987. During Wade’s entire stay in Lake Charles Memorial he was treated with I.V. antibiotics and with hyperbaric oxygen treatments. The drain was finally removed, oral antibiotics started, and Wade was discharged on December 11,1987.
Dr. Cohen followed Wade’s ease through July 7,1988, at which time he referred Wade to Dr. Faust, a hand specialist, in New Orleans. This referral was necessitated because of the hand’s lack of response to physical therapy and Wade’s continued complaints of stiffness and sensitivity of his left hand. Dr. Faust evaluated Wade on July 22, 1988. When conservative treatment faded to bring about the desired results, Dr. Faust operated on Wade’s hand on December 2, 1988. During that operation, Dr. Faust released a number of adhesions, removed scar tissue from around nerves which had gone to the ring finger, and performed a capsulotomy, a release of the capsule of the joint of the ring finger (stump). Dr. Faust followed Wade’s progress until he discharged Wade on February 15, 1989, back to Dr. Cohen. Dr. Cohen released Wade to full activity on March 1, 1989.
After unsuccessfully bringing their claim before a medical review panel, plaintiffs Wade and Jan Roberts filed this suit. In the instant action they sought damages alleging Dr. Lowry’s care of Wade fell below the applicable standard of care and thus caused Wade’s infection and accompanying complica *1327 tions. They allege Wade’s infection and treatment, in turn, caused Mrs. Roberts’ loss of consortium.
The case was tried before the trial judge over three days in August 1994. Written reasons for judgment were entered December 21, 1994. Thereafter, two different motions, for new trials were heard. Following said motions the original judgment of the trial court was modified to reduce the plaintiffs award for medical expenses by eliminating those expenses which the plaintiff would have incurred in|5the treatment of his amputation had his hand not become infected. Also, plaintiffs claim for loss of income was deleted for lack of proof. Defendants appeal the trial court’s finding of liability on the part of Dr. Lowry, its failure to assess any liability to Allen Parish Hospital and the quantum of general damages awarded Wade Roberts.
LAW AND DISCUSSION
Recently in Chatman v. City of Opelousas, 95-0950 (La.App. 3 Cir. 12/6/95); 670 So.2d 211, writ denied, 96-80 (La. 3/8/96); 669 So.2d 402, this court reviewed the law applicable to the ease sub judice stating:
The alleged errors argued by plaintiff on appeal involve factual findings and discretionary awards by the trial judge. These issues are reviewed on appeal under the doctrines of “manifest error” and “abuse of discretion.” The doctrine of manifest error was discussed earlier this year by the Louisiana Supreme Court in the case of Ferrell v. Fireman’s Fund Insurance Co., 94-1252, pp. 4-5 (La. 2/20/95), 650 So.2d 742, 745-746, wherein the court stated:
In Rosell v. ESCO, 549 So.2d 840 (La. 1989), we synthesized the “manifest error” and “clearly wrong” appellate review of facts limitations that have been handed down by this court in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) and Canter v. Koehring, 283 So.2d 716 (La.1973) and the United States Supreme Court in Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), Zenith, Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969), and United States v. U.S. Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948), as follows:
It is well settled that a court of appeal may not set aside a tidal court’s or a jury’s finding of fact in the absence of ‘manifest error’ or unless it is ‘clearly wrong,’ and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. * * * The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the | (¡findings in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. ⅜ * * In applying the manifestly erroneous — clearly wrong standard to the findings below, appel- ■ late courts must constantly have in mind that their review function is not to decide factual issues de novo.
When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based *1328 upon a credibility determination. But where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Id. at 844-45 (citations omitted).
Our opinion in Stobart v. State, 617 So.2d 880 (La.1993), was not intended to change that synthesis or to make the scope of appellate review of facts any more limited than described in Rosell, Arceneaux, Canter, et al, supra.
Id. at 3, 4, 670 So.2d at 214-15.
|7In the ease at bar there was conflicting testimony as to whether Wade received an intravenous dose of Rocephin® on the day of the accident. Neither Wade nor any other plaintiff witness remembered Wade receiving any I.V. medication on November 18, 1987. Additionally, the medical records from Allen Parish Hospital transferred with Wade to Lake Charles Memorial document no such order; neither was Roberts charged for any such medication. The registered nurse who was the charge nurse for the E.R. at the time of Wade’s accident, testified at trial that she had no independent recollection of Wade’s treatment which had taken place some seven years before. Only Dr. Lowry was positive that Wade had been given the Rocephin® on the day of the accident. This fact is critical, as the physicians who testified as to the appropriate standard of care in this case all agreed that I.V. antibiotic therapy was mandated.
Additionally there is disputed testimony as to how well and how much of Wade’s arm and hand were cleaned prior to Dr. Lowry suturing the wound closed. Dr. Lowry contended that Wade’s entire hand and arm were washed and covered with sterile drapes before he debrided, irrigated and closed the wound. Wade and his family maintained that Wade’s shirt was merely split back away from the hand and that his hand and arm remained contaminated with soil, grease, and dried blood.
The trial judge chose to believe Wade and his witnesses on both of the issues and concluded that both the lack of initial I.V. antibiotic coverage and the failure by Dr. Lowry to provide a more sterile environment in which to work violated the applicable standard of care. We find no manifest error in that determination.
Appellants also claim the trial judge erred in not assigning some percentage of fault to Allen Parish Hospital. The trial judge did not specifically state that he found Allen Parish Hospital free from fault in his original “Opinion of the Court on Merits.” IsHowever, in his written reasons denying defendants’ motion for a new trial on the issue of the negligence of Allen Parish Hospital, he specifically addressed that issue and found “... no negligence on the part of Allen Parish Hospital.” Appellants’ arguments fail to convince us that such a finding is clearly wrong. Dr. Lowry was in charge of and responsible for his patient’s care. He made the decisions as to what care was necessary and how such care was to be administered. The hospital’s employees merely carried out those orders. We find no evidence that any Allen Parish Hospital employee failed to carry out any order of Dr. Lowry.
The final issue before the court is the $175,000.00 in general damages the trial, judge awarded Wade. Appellants argue that this award is excessive and not supported by the circumstances. The law governing our review of damage awards is well settled:
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239,158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck [v. Stevens, 373 So.2d 498 (La.1979)] to the present case is that the discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a par *1329 ticular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, — U.S. —, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
In the ease before us, after losing a finger, Wade Roberts was faced with the possible loss of, at least, a hand for a number of months. In connection with the infection which developed, he had to undergo three surgical procedures under general Iganesthesia. After the danger of losing his hand and/or arm passed, he then had to face a possible lifetime of living with a stiff and hyper-sensitive hand. These complications necessitated another surgery in December 1988, over a year after Wade’s initial injury. It was some months after this surgery that Wade knew it was successful and he would have complete use of his hand once again.
While we find the general damage award to be generous, we do not find the award so outrageous, considering the particular effects (particularly the emotional and mental stress endured) under the particular facts which surrounded this particular plaintiff, so as to be unreasonable and an abuse of the trial court’s much discretion.
Accordingly, for the reasons stated above, the judgment of the trial court is affirmed. All costs of this appeal are assessed against appellants, Dr. James Lowry and the Louisiana Medical Mutual Insurance Company.
AFFIRMED.
THIBODEAUX, J., concurs in the result.